UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

RLI INSURANCE COMPANY,                    Case No. 19-CV-1757 (PJS/HB)

        Plaintiff/Counter-Defendant,

v.                                        ORDER

STAN KOCH & SONS TRUCKING, INC.,

        Defendant/Counter-Claimant.

---

Erik T. Salveson, NILAN JOHNSON LEWIS PA, for plaintiff/counter-defendant.

R. Henry Pfutzenreuter and Paul R. Smith, LARKIN HOFFMAN DALY & LINDGREN, LTD., and Lauris A. Heyerdahl, for defendant/counter-claimant.

This case involves a series of contract disputes between defendant Stan Koch & Sons Trucking, Inc., ("Koch") and Koch's longtime insurer, plaintiff RLI Insurance Company ("RLI"). RLI filed suit in July 2019, alleging that Koch had breached its contractual obligations by failing to provide adequate security for a bond issued by RLI. Koch counterclaimed, alleging that RLI had failed to pay Koch amounts due under the parties' agreements. This matter is now before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, both motions are granted in part and denied in part, and all claims and counterclaims are dismissed.

## I.  BACKGROUND

Koch is a trucking company.  Koch purchased liability insurance from RLI in 2007 and renewed its policy every year until 2018, when Koch switched insurers.[1]  ECF No. 33 ¶ 4; ECF No. 34 ¶ 5.  During all coverage periods relevant to this litigation, Koch elected to maintain a large self-insured retention, meaning that Koch was responsible for investigating, adjusting, defending, and paying claims under a certain (high) threshold.  ECF No. 33-1 at 2.  In other words, Koch essentially functioned as its own primary insurer, and RLI essentially functioned as Koch's excess insurer.  Because Koch was responsible for paying most claims, RLI bore less risk, and consequently Koch paid a lower premium.  *See id.*

Under federal law, however, a commercial motor carrier such as Koch cannot function as its own primary insurer; instead, it must be insured for every dollar of potential liability.  ECF No. 46 ¶ 2; ECF No. 47-1 at 14.  To comply with this requirement, Koch obtained from RLI a bond under which RLI agreed to be liable for any claims that Koch failed to pay, including claims within the self-insured retention.  *See* ECF No. 46 ¶ 2; ECF No. 47-3.  In exchange for this bond, Koch agreed to provide security in the form of a letter of credit or cash.  *See* ECF No. 33-1 at 5.  As a result, if RLI did have to step in and pay a claim within Koch's self-insured retention, RLI could seek

---

[1]RLI did not insure Koch for a one-year period between 2011 and 2012.  ECF No. 34 ¶ 5; ECF No. 47-1 at 6; ECF No. 47-6 at 2.

reimbursement of that payment from Koch—and, if Koch failed to reimburse RLI, RLI could recover against the security that Koch provided.  In essence, then, RLI took on little or no additional risk when it issued the bond.

The Self-Insured Retention Agreement ("SIR Agreement"), which memorializes this arrangement, provides that the amount of the security provided by Koch must be the greater of $1.75 million or 125% of the reserves maintained by Koch to pay pending and anticipated claims.  *Id.*  A "reserve" is "the amount of money for which a claim . . . could be expected reasonably to be disposed of."  *Id.* at 3.  The SIR Agreement grants RLI "the unrestricted right at any time to establish or revise Reserves."  *Id.*  If the security on deposit dips below the required amount, Koch must deposit additional security within 15 days of receiving written notice of the deficiency.  *Id.* at 5–6.  If Koch fails to timely post additional security, the SIR Agreement gives RLI the right to "cancel the Policy, and all Endorsements, Filings and Certificates, including this Agreement."  *Id.* at 6.

Over the years, RLI has routinely audited Koch's reserves, and RLI has twice requested that Koch provide additional security—once in 2008 and again in 2013.  ECF No. 46 ¶ 13; ECF No. 47-1 at 24–25.  In both instances, Koch complied by providing an amended letter of credit.  ECF No. 47-4; ECF No. 47-1 at 24–25.  Koch currently has a $2 million letter of credit in place, and this amount has remained constant since the

letter of credit was last increased at RLI's request on September 6, 2013.  ECF No. 47-4 at 6.

On July 24, 2018, RLI conducted a routine audit of Koch's reserves.  *See* ECF No. 47-6.  Prior to the audit, Koch advised that its reserves were $3,838,576.01.  ECF No. 47-1 at 37–38; ECF No. 47-6 at 3.  Needless to say, Koch's $2 million letter of credit did not come close to satisfying Koch's contractual obligation to maintain security in the amount of 125% of its reserves.  Accordingly, RLI demanded that Koch provide additional security.  ECF No. 47-7.

In late August 2018, Koch notified RLI that it would not be renewing its insurance policy—i.e., that it would be moving its business to a different carrier.  *See* ECF No. 47-8 at 3–4.  But that did not end the relationship between the parties.  Because the policies that Koch had purchased from RLI were occurrence-based (not claims-made), any claim asserted against Koch that arose out of events that had occurred while RLI insured Koch remained covered by RLI and remained subject to the SIR Agreement.  *See* ECF No. 47-1 at 12.  Therefore, Koch remained obligated to provide security in the amount required by the SIR Agreement.

After receiving notice that Koch would not be renewing its policy, RLI issued at least two more requests that Koch provide additional security.  ECF No. 47-8 at 2–3; ECF No. 47-9 at 3–5.  Koch responded by requesting that RLI perform a new audit of

-4-

Koch's reserves, explaining that Koch had recently resolved several significant claims. ECF No. 47-12 at 3; ECF No. 47-15 at 3.  RLI conducted another audit, and that audit determined that Koch still owed more than $2.2 million in additional security.  ECF No. 47-21.  Despite RLI's repeated demands, Koch failed to increase its letter of credit—something that Koch was indisputably obligated to do under the SIR Agreement.

Because Koch was clearly in breach of the SIR Agreement, RLI had the right to cancel that agreement and all underlying insurance policies.  ECF No. 33-1 at 6.  RLI chose not to exercise its contractual remedies, however.  Instead, RLI decided to retaliate against Koch by breaching its own contractual obligations.  Specifically, RLI withheld over $200,000 in payments that were indisputably owed to Koch—telling Koch that, as soon as Koch fulfilled its obligation to post the additional security, RLI would fulfill its obligation to pay the withheld sums.  *See* ECF No. 33 ¶ 15.

RLI then filed this lawsuit, seeking an injunction, declaratory relief, and damages in connection with Koch's refusal to provide the amount of security required by the SIR Agreement.[2]  Koch answered and counterclaimed, alleging breach of contract and breach of the covenant of good faith and fair dealing in connection with RLI's refusal to pay over the amounts that it was withholding.  ECF No. 34.  Specifically, Koch alleged

---

[2]RLI conducted a third audit after filing suit, the results of which showed that Koch was still in breach of the SIR Agreement.  ECF No. 47-25.

that RLI wrongfully withheld a $4,662 premium refund, a $24,672 owner/operator deposit, and $187,254.78 in loss-adjustment expenses.[3]

While this lawsuit has been pending, Koch has continued to resolve claims, and its reserves have continued to shrink.  As of December 10, 2020, Koch calculated its aggregate reserves to be just $673,519.  ECF No. 53 ¶ 11; ECF No. 53-1 at 80.  The parties now agree that, because Koch's reserves have shrunk so dramatically, Koch's $2 million letter of credit (which remains in place) is more than sufficient to satisfy Koch's obligations under the SIR Agreement.  The parties further agree that, during the period that Koch did not provide the amount of security required by the SIR Agreement, RLI was never called upon to pay any claim or expense on behalf of Koch.  ECF No. 53-1 at 187.  In other words, the amount of the security turned out not to matter, as RLI never had to make a payment on behalf of Koch, much less ask Koch to reimburse it for that

---

[3]At the time of the summary-judgment hearing, Koch believed that the amount due for loss-adjustment expenses was $198,125.29.  *See* ECF No. 56 at 10 (stating that loss-adjustment expense owed in the "William Wood (driver) matter, Claim #00429786" was $128,737.99 and loss-adjustment expense owed in the "Eddie Smith matter, Claim #00446159" was $69,387.30).  Following subsequent correspondence between Koch and RLI, the parties now appear to agree that RLI actually owed a total of $187,254.78 in loss-adjustment expenses.  *See* ECF No. 63 at 2 (documenting RLI's payment for Claim # 00429786 in the amount of $129,767.89); ECF No. 64 at 3 (email from Koch employee confirming that RLI owes $57,486.89 on Claim # 00446159); ECF No. 64 at 2 (documenting RLI's payment for Claim # 00446159 in the amount of $57,486.89).  This corrected figure is substituted throughout.

payment, much less be refused reimbursement, much less turn to the security to be made whole.

After determining that Koch was no longer in breach of the SIR Agreement, RLI paid over to Koch all of the sums that it had been withholding.  RLI represents—and Koch does not dispute—that Koch was paid in full as of April 13, 2021.  ECF No. 64.

So that's the end of this lawsuit, right?  After all, RLI filed this lawsuit because Koch was not providing the required amount of security.  But Koch is now providing far more security that the SIR Agreement requires, and its past breach did not harm RLI.  And Koch filed its counterclaims because RLI was refusing to make payments that were due under the contract.  But RLI has now made those payments.  So what is left to fight about?  Most people would respond, "nothing."  But the relationship between these parties is so acrimonious that, instead of simply walking away from this litigation, they have continued to pay their lawyers to find creative ways to try to keep this lawsuit alive.

Each party now moves for summary judgment, seeking judgment in its favor on its claims and dismissal of its opponent's claims.  Because the dispute between the parties is largely moot, the Court dismisses all of the remaining claims and counterclaims.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Id.* at 255.

The issue of mootness relates to the Court's subject-matter jurisdiction.  "'When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot' and cannot be heard by a court."  *Life Invs. Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1121 (8th Cir. 2012) (quoting *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc)).  "Generally, a claim is moot when 'changed circumstances already provide the requested relief and eliminate the need for court action.'"  *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (citation omitted).

### B.  RLI's Claims for Injunctive & Declaratory Relief

RLI seeks an injunction compelling Koch to maintain security in the amount required by the SIR Agreement—that is, the greater of $1.75 million or 125% of Koch's aggregate reserves as determined by RLI.  ECF No. 33-1 at 5.  RLI also seeks a declaration that the SIR Agreement is valid and enforceable in all respects and that Koch breached the SIR Agreement by failing to provide additional security following RLI's written demands.

At the time that this lawsuit was filed in 2019, these were live issues.  RLI had repeatedly demanded that Koch provide more than $2 million in additional security, and Koch had repeatedly failed to do so in clear breach of the SIR Agreement.  But a lot has happened since this lawsuit was filed.  Koch settled or otherwise disposed of numerous claims, and the amount of security that Koch is now providing exceeds the amount of security that Koch is required to provide under the SIR Agreement.  Koch argues that, as a result, RLI's claims for injunctive and declaratory relief are now moot. The Court agrees.

A claim is moot "when the 'requisite personal interest' that gave the plaintiff standing to bring the [claim] disappears as the case proceeds."  *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (citation omitted).  "In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and 'there is no

reasonable expectation that the wrong will be repeated.'" *Mo. Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007) (citation omitted).  The same is true with respect to claims for declaratory relief.  *See Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019) (citing *Smith v. Hundley*, 190 F.3d 852, 854–55 (8th Cir. 1999)).

Here, the challenged conduct—Koch's failure to supply security in the amount required by the SIR Agreement—has ceased.  RLI argues that it is nonetheless entitled to declaratory and injunctive relief because Koch may breach the SIR Agreement again in the future—for example, by withdrawing its letter of credit, or by refusing to provide additional security in the event that its reserves unexpectedly and dramatically increase. But these possibilities are "too remote to establish an ongoing case or controversy." *Ayyoubi v. Holder*, 712 F.3d 387, 391 (8th Cir. 2013); *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (concluding that "speculation and conjecture" as to defendants' future acts were insufficient to save claims from mootness).

Koch has had a $2 million letter of credit in place since 2013, and Koch has given no indication that it intends to withdraw or decrease it.  *See* ECF No. 47-4 at 6.  Further, RLI has cited no evidence that Koch's reserves are likely to balloon.  Common sense suggests that, as Koch continues to resolve claims, its reserves will continue to decline. True, claims arising out of events that occurred prior to September 1, 2018, could still be filed, but Koch must already know of virtually all such events (such as collisions

-10-

involving its trucks).  It seems extraordinarily unlikely that so many unanticipated

claims will be filed—and those claims will be so large—that Koch's $2 million letter of

credit will again prove inadequate.

For these reasons, RLI's claims for declaratory and injunctive relief are dismissed

without prejudice as moot.

### C.  RLI's Breach-of-Contract Claim Seeking Damages

RLI also seeks damages for Koch's past breach of the SIR Agreement.  The SIR

Agreement is governed by Illinois law.  ECF No. 33-1 at 9.  "Under Illinois law, a breach

of contract claim has four elements: '(1) the existence of a valid and enforceable

contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and

(4) resultant injury to the plaintiff.'"  *Hess v. Bresney*, 784 F.3d 1154, 1158–59 (7th Cir.

2015) (citation omitted).  "Damages are an essential element of a breach of contract

action and a claimant's failure to prove damages entitles the defendant to judgment as a

matter of law."  *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013).

"The measure of damages for breach of contract is the amount that will compensate the

aggrieved party for the loss 'which either fulfillment of the contract would have

prevented or which the breach of it has entailed.'"  *Santorini Cab Corp. v. Banco Popular N.*

*Am.*, 999 N.E.2d 46, 52 (Ill. App. Ct. 2013) (quoting *LeFevour v. Howorka*, 586 N.E.2d 656,

658 (Ill. 1991)).

Koch contends that it is entitled to summary judgment on RLI's breach-of-contract claim because Koch's breach did not harm RLI and therefore RLI cannot establish damages.  The Court agrees.  Before Koch could lose a single penny as a result of Koch's failure to maintain adequate security, a claim within Koch's self-insured retention would have to be made against Koch, and the following would have to occur:

1.      Koch would have to fail to pay the claim.

2.      The claimant would have to make a claim against RLI's bond.

3.      RLI would have to pay the claim.

4.      RLI would have to seek reimbursement from Koch.

5.      Koch would have to fail to reimburse RLI.

6.      RLI would have to attempt to recover against the security provided by Koch.

7.      The security would have to prove inadequate, leaving RLI with an unrecoverable loss.

*None* of this happened.  Koch never failed to pay a claim.  No claim was ever made against the bond.  RLI never made a payment to a claimant.  And so on.  ECF No. 53-1 at 187.  RLI did not lose a cent on account of Koch's breach of its contractual

-12-

obligation to provide sufficient security.  Accordingly, Koch is entitled to summary

judgment on RLI's breach-of-contract claim.[4]

RLI strenuously resists this conclusion and argues that it has suffered damages

because (1) RLI was forced to cover a risk without compensation and (2) RLI was forced

to bring this lawsuit, which caused it to incur attorney's fees and costs.  For the reasons

that follow, the Court finds that neither argument is persuasive.

## 1.  Exposure to Risk

RLI argues that it was damaged by Koch's failure to provide an amended letter

of credit as required by the SIR Agreement because Koch's breach forced RLI to cover

risk without being compensated.  In the typical case, RLI argues, a surety issues a bond

---

[4]RLI cites several cases in which courts have enforced contractual provisions
requiring one party to provide collateral security.  *See, e.g.*, *Hanover Ins. Co. v. Clark*,
No. 05-C-2162, 2006 WL 2375428 (N.D. Ill. Aug. 15, 2006) (enforcing indemnification
agreement where principal defaulted on contract and claims were made on bond);
*Ramsay's Est. v. Whitbeck*, 56 N.E. 322 (Ill. 1900) (involving lawsuit to recover sums paid
by sureties); *United City of Yorkville v. Fid. & Deposit Co. of Md.*, 143 N.E.3d 69 (Ill. App.
Ct. 2019) (discussing parties' rights and obligations where principal went bankrupt
prior to completion of contract); *City of Elgin v. Arch Ins. Co.*, 53 N.E.3d 31 (Ill. App. Ct.
2015) (same); *Mountbatten Sur. Co., Inc., v. Szabo Contracting, Inc.*, 812 N.E.2d 90, 101 (Ill.
App. Ct. 2004) (enforcing indemnity agreement where subcontractors and suppliers
made claims on bond).

But the question in this case is not whether the SIR Agreement is enforceable.  It
is.  Nor is the question whether Koch breached the agreement.  It did.  The question is
whether RLI was damaged by Koch's breach.  It was not.  None of the cases cited by RLI
stand for the proposition that a party may prevail on a breach-of-contract claim under
Illinois law absent any proof that it incurred damages.

guaranteeing that the principal will pay or perform its obligations.  And, in the typical case, the principal pays a premium to the surety for covering that risk.  But in this case, rather than securing the bond by paying a premium, Koch essentially secured the bond by providing sufficient collateral to remove the risk that RLI was purporting to cover with the bond.  RLI argues that, just as it would have been harmed by the nonpayment of premiums in the "typical case," so too was it harmed by Koch's failure to provide sufficient security in this case.  *See* ECF No. 57 at 13.  Put another way, Koch's failure to provide adequate security forced RLI to cover a risk, and Koch did not pay RLI to cover that risk.

According to RLI, Koch's argument that RLI's claim should be dismissed for lack of damages is akin to "an insured claiming that it should not have to pay a premium for its insurance policy because it had no claims during the policy period." *Id.* at 14.  The point, says RLI, is not that it never had to make a payment under the bond.  Rather, the point is that it was not compensated for covering a risk.

Unfortunately for RLI, however, its argument finds no support in Illinois law. Under Illinois law, "damages due to a breach of contract are limited to actual losses arising from the breach." *349 W. Ontario Bldg. Corp. v. Palmer Truck Leasing Co.*, 317 N.E.2d 740, 748 (Ill. App. Ct. 1974).  "The purpose of damages is to put the nonbreaching party into the position he or she would have been in had the contract

-14-

been performed, but not in a better position. Compensation awarded in a breach of contract action should not provide plaintiff with a windfall." *Walker v. Ridgeview Constr. Co.*, 736 N.E.2d 1184, 1187 (Ill. App. Ct. 2000).

Suppose, consistent with RLI's hypothetical, that an individual takes out a health-insurance policy and agrees to pay a premium of $1,000 per month. Suppose further that the insured fails to pay her premium for three months—a three-month period in which she did not incur any health-care expenses. If both parties to the contract had fully performed—in particular, if the insured had paid her premiums as promised—then the insurer would have collected $3,000. In other words, at the time the insurer files suit, the insurer has $3,000 less than it would have had if the insured had fulfilled her obligations under the contract. Thus, to put the insurer in the position in which it would be had the insured performed, the court must order the insured to pay $3,000 to the insurer.

In this case, by contrast, Koch agreed to maintain enough security so that RLI would bear almost no risk under its bond. Koch failed to post adequate security and thus failed to eliminate RLI's risk. Fortunately, however, no one made a claim under the bond. As a result, RLI suffered no damages. RLI has $x$ amount of money. If Koch had not breached, RLI would have exactly the same amount of money: $x$. Thus, ordering Koch to pay damages to RLI is not necessary "to put the nonbreaching party

-15-

into the position he or she would have been in had the contract been performed."
*Walker*, 736 N.E.2d at 1187.  RLI is already *in* that position.  Ordering Koch to pay damages to RLI would instead "provide plaintiff with a windfall," which is expressly prohibited under Illinois law.  *Id.*

RLI complains that, if Koch is not ordered to pay damages, then Koch could breach its obligation to maintain sufficient security with impunity.  If RLI were correct, its quarrel would be with Illinois law, not with this Court.  But RLI is not correct.  RLI had at least three remedies available to it:

First, RLI could have sought injunctive relief, asking a court to order Koch to increase the amount of security that it was providing.  That, in fact, is what RLI did in bringing this lawsuit.  If Koch's security were still inadequate—or if there were a realistic possibility that Koch's security would become inadequate in the future—this Court would now be entering an injunction against Koch.

Second, Koch could have implemented the very remedy that the SIR Agreement provides.  According to § 3(c) of the SIR Agreement, if Koch fails to provide adequate security within 15 days of RLI's written demand, RLI may, "in addition to any other remedies, cancel the Policy, and all Endorsements, Filings and Certificates, including this Agreement."  ECF No. 33-1 at 6.  RLI was not forced to provide coverage for a risk without compensation; the SIR Agreement on its face allowed it to terminate all

coverage if Koch did not provide adequate security.  RLI chose not to avail itself of this

remedy.[5]

Third, RLI could have purchased additional security from a third party to

eliminate the risk caused by Koch's breach.  If RLI had done so, RLI could now seek to

recover the cost of purchasing that security.  Again, RLI failed to pursue an available

remedy.

RLI argues that, even though it did not obtain additional security from a third

party, RLI should now be able to recover the amount of the premium that it would have

paid to a third party if it *had* obtained additional security.  RLI's justification for this

request is that it "internalized" the cost of the premium that it would have paid to

someone else.  *See* ECF No. 57 at 14.  Specifically, RLI argues that, through discovery,

RLI learned that the cost to Koch of obtaining a letter of credit is 2.5% of the amount of

the security.  ECF No. 47-1 at 36.  Based on this fact, RLI calculates that it would have

cost Koch $137,222.50 to provide sufficient security for the entire period that it was in

---

[5]RLI argued at the summary-judgment hearing (but not in its brief) that this
contractual remedy was not available to it because insurance regulations prevent
insurers from canceling coverage under these circumstances.  The Court has no idea if
that is true.  RLI did not cite or otherwise provide any information about these
"regulations"—and, because RLI did not make this argument until the hearing, Koch
did not have a chance to respond.  Even assuming that RLI is correct, however, it would
simply mean that RLI did a poor job negotiating the contract; it would not mean that
RLI could not have negotiated an effective contractual remedy.

breach.  ECF No. 46 ¶ 11.  RLI argues that this figure is a "conservative measure" of the premium cost that RLI "internalized."  ECF No. 45 at 8.

This is a novel theory of damages—and, as RLI candidly acknowledged at oral argument, RLI is not aware of a single court that has ever accepted its theory.  This Court does not believe that the Illinois Supreme Court would be the first court to do so.  As this Court has explained, Illinois courts have consistently held that the purpose of an award of damages is to put the plaintiff in the position in which it would have been if the breach had not occurred.  If the Court were to accept RLI's theory, RLI would end up with $137,222.50 more than it would have if Koch had not breached.  That sounds like a windfall—and, as noted, windfalls are prohibited by Illinois law.  *See Walker*, 736 N.E.2d at 1187.[6]

## 2.  Attorney's Fees

RLI next argues that it can establish damages because it incurred attorney's fees and litigation costs in bringing this lawsuit, and it never would have incurred these expenses if Koch had not breached the SIR Agreement.  But even if a contractual award of attorney's fees could satisfy the damages element of a breach-of-contract claim—and

---

[6]Even if the Illinois courts were willing to accept RLI's theory, RLI would have problems of proof.  There is no reason to believe that Koch's cost to obtain a letter of credit is the same as whatever "cost" RLI incurred in "internalizing" the risk created by Koch's breach.  Nor is there any other evidence in the record that would allow a jury to assess the amount of this "internalized" cost.

RLI has cited no authority to suggest that it can[7]—RLI is not entitled to attorney's fees because it is not a prevailing party in this action.

The SIR Agreement contains an unusual attorney's-fees provision that is split between two paragraphs.  First, in § 3(a), the parties agree that Koch will "deposit and maintain with [RLI] certain collateral as security to insure the performance of [Koch's] Obligations."  ECF No. 33-1 at 5.  These "Obligations" are defined as any indebtedness or other obligation that Koch has to RLI, including RLI's "reasonable costs, legal expenses and attorneys' fees incurred as a result of execution or enforcement" of various "Documents," including the SIR Agreement.  *Id.*  Section 3(e) then provides that RLI "may draw against" this collateral and "apply proceeds thereof" to indemnify itself "for any and all liability, losses, costs, damages, attorneys' fees, and disbursements, and any other expenses that [RLI] may sustain . . . in enforcing any of the covenants of th[e SIR] Agreement."  *Id.* at 6.  As relevant to this litigation, then, the SIR Agreement

---

[7]RLI cites *RLI Insurance Co. v. Roberts*, 819 F. App'x 227 (5th Cir. 2020), for the proposition that attorney's fees may constitute damages in a breach-of-contract action. But, in *Roberts*, the surety filed suit against the indemnitor after the principal defaulted on its contract and the surety was sued on the bond.  In explaining that the dispute between the surety and indemnitor remained live (even though the surety had apparently settled the underlying litigation), the Fifth Circuit noted that the surety was still seeking indemnification for the attorney's fees it incurred *in defending the underlying litigation—not* the attorney's fees that it was incurring in pursuing its lawsuit against the indemnitor.

provides that RLI may draw against Koch's collateral to indemnify itself for attorney's fees incurred "in enforcing" the SIR Agreement.

Illinois courts construe attorney's-fees provisions narrowly and, in interpreting similar "in enforcing" language, those courts have held that attorney's fees are available only to a prevailing party. In *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. Ct. 2001), for example, the court construed a lease agreement that provided: "Each party agrees to pay and discharge all reasonable costs, attorneys' fees and expenses which may be incurred or made by the other in enforcing the covenants and agreements of this lease." *Id.* "[C]onsistent with the strict construction given such provisions," the court held that this language only provided for an award of attorney's fees "to a prevailing party." *Id.* at 241. As the court explained, "[t]he word 'enforce' means 'to compel obedience to.' Black's Law Dictionary 528 (6th ed. 1990). Accordingly, . . . a party is entitled to an award of attorney fees under this provision only when she or he can demonstrate that the other party was compelled by the trial court to obey a condition of the lease." *Id.*

Here, RLI cannot demonstrate that Koch was "compelled by the . . . court to obey" any provision of the SIR Agreement. None of RLI's claims have survived summary judgment, and thus RLI has not sustained any attorney's fees "in enforcing any of the covenants of th[e SIR] Agreement."

Further, even if RLI were a "prevailing party," the SIR Agreement does not explicitly grant this Court authority to award attorney's fees. Instead, the SIR Agreement authorizes RLI to draw against Koch's letter of credit to indemnify itself for any attorney's fees or costs that RLI incurs in enforcing the SIR Agreement. Nowhere does the SIR Agreement give this or any other court the authority to award attorney's fees incurred in enforcing the contract. Absent any such language—and given that attorney's-fees provisions are narrowly construed under Illinois law—the Court finds that, even if RLI were a prevailing party, the Court would not have authority to order Koch to pay RLI's attorney's fees.[8] *See Oak Forest Props., LLC v. RER Fin., Inc.*, 116 N.E.3d 341, 344 (Ill. App. Ct. 2018) ("[C]ontracts that provide for an award of attorney fees to the prevailing party are in derogation of common law and must be strictly construed."); *Chapman v. Engel*, 865 N.E.2d 330, 333 (Ill. App. Ct. 2007) ("We are required to strictly construe a contractual provision for attorney fees."); *Erlenbush v. Largent*, 819 N.E.2d 1186, 1189 (Ill. App. Ct. 2004) (holding that attorney-fee provisions must be strictly construed "to mean nothing more—but also nothing less—than the letter of the text").

---

[8]RLI argues that Koch's Rule 30(b)(6) witness admitted that RLI is "entitled to recover its attorney fees and litigation costs in enforcing the SIR Agreement." ECF No. 57 at 11. Even accepting this statement as a fair interpretation of the deposition transcript that RLI cites, *see* ECF No. 47-1 at 22, this is not an admission by Koch that RLI is entitled to recover its fees and costs *from a court* rather than (as the SIR Agreement expressly provides) *from the letter of credit*.

For these reasons, the Court finds that, although Koch breached its contractual

obligation to provide adequate security, RLI suffered no damages on account of that

breach, and thus Koch is entitled to summary judgment on RLI's breach-of-contract

claim.[9]

### D.  Koch's Counterclaims

As explained above, RLI chose to respond to Koch's breach of the SIR Agreement

not by pursuing the remedies provided in that agreement but instead by committing its

own (retaliatory) breaches of the parties' agreements.  Specifically, RLI withheld over

$200,000 in payments that were indisputably owed to Koch—telling Koch that, as soon

as Koch fulfilled its obligation to post the additional security, RLI would fulfill its

obligation to make the payments.  *See* ECF No. 33 ¶ 15.

Koch filed a counterclaim seeking payment of the withheld amounts, alleging

breach of contract and breach of the covenant of good faith and fair dealing.  According

to Koch, RLI owes a total of $216,588.78, which consists of a $4,662 premium refund, a

$24,672 owner/operator deposit, and $187,254.78 for loss-adjustment expenses.  ECF

No. 34 ¶ 45; ECF Nos. 63–64.

---

[9]Because the Court resolves this claim based on RLI's failure to establish
damages, the Court does not reach Koch's alternative arguments that (1) Koch had no
affirmative obligations to RLI under the parties' agreements; (2) RLI's reserve
calculations were unreasonable; and (3) RLI waived the right to challenge the breach.

RLI argued in its summary-judgment briefing that Koch's counterclaims were "moot" because "RLI has consistently taken the position that . . . it will pay these amounts to Koch when Koch confirms that the security it is providing is no longer deficient."  ECF No. 45 at 2.  At oral argument, RLI went further and represented that it was in the process of paying the withheld amounts to Koch.  RLI argued that, because it was giving Koch all of the relief that it sought in its counterclaims, there was no longer a live controversy for the Court to consider.  Koch, in turn, argued that its "breach of contract claim is not moot unless and until RLI reimburses Stan Koch, and in the absence of that, Stan Koch is entitled to immediate entry of summary judgment on its breach of contract counterclaim in the undisputed amount of $[216,588.78]."  ECF No. 60 at 16.

Given that the parties appeared to agree that Koch's counterclaims would be moot if RLI paid the withheld amounts, and given that RLI represented that it was in the process of making those payments, the Court asked that once the payments had been made, the parties submit a letter confirming that Koch's counterclaims could be dismissed as moot.  The parties agreed to proceed in this manner.

Six weeks after oral argument, RLI filed a letter stating that all amounts owing to Koch had been paid and that Koch's counterclaims were now fully resolved.  ECF No. 64.  As this letter was not jointly signed by Koch, the Court issued an order on

April 15, 2021, recounting the parties' joint representation that payment of the amounts

claimed by Koch would resolve Koch's counterclaims, and requiring Koch to show

cause why its counterclaims should not be dismissed as moot.  ECF No. 65.

In its response to that order, Koch did not dispute that all of the withheld sums

had been paid.  Nor did Koch invoke any exception to the mootness doctrine (such as

the voluntary-cessation exception or the capable-of-repetition-yet-avoiding-review

exception).[10]  *See Whitfield*, 3 F.4th at 1047 ("the party invoking the exception [to

mootness] . . . bears the burden of demonstrating that it applies").  Instead, Koch

argued—for the first time—that its counterclaims are not moot because it is entitled to

attorney's fees under the insurance policy and because it is entitled to prejudgment

interest under Minnesota law.[11]  For the reasons that follow, the Court disagrees.

### 1.  Attorney's Fees

Koch's claim for attorney's fees does not save its counterclaims from being

dismissed as moot.  "[T]he mere fact that continued adjudication would provide a

---

[10]*See, e.g.*, *Whitfield*, 3 F.4th at 1047–48 (describing "capable-of-repetition-yet-evading-review exception to mootness"); *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (describing voluntary cessation).

[11]*See Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597 (8th Cir. 2007) ("Minnesota's prejudgment interest statute applies in the absence of [a] choice-of-law provision that expressly governs procedural matters"); ECF No. 33-1 at 9 (providing that Illinois law governs substantive matters of contract interpretation but silent with respect to procedural matters).

remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III." *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[An] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."); *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 n.5 (8th Cir. 2006) ("A potential right to attorney fees alone would be insufficient to keep this controversy alive.").

## 2. Prejudgment Interest

Koch claims that it is entitled to prejudgment interest and that its unresolved claim for prejudgment interest means that its counterclaims are not moot.  There are at least two problems with Koch's argument:

First, Koch seeks prejudgment interest under Minn. Stat. § 549.09, subd. 1(a); indeed, Koch argues that prejudgment interest is "mandatory" under that statute.  ECF No. 66 at 4 (quoting *Quest Commc'ns Co. v. Free Conferencing Corp.*, No. 10-CV-490 (MJD/SER), 2017 WL 4618277 at *32 (D. Minn. Mar. 31, 2017)).[12]  Section 549.09,

---

[12]Koch also claims that it is entitled to prejudgment interest under Minnesota common law, but common-law prejudgment interest is not mandatory.  *See Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 866 (8th Cir. 2011) (explaining that, under Minnesota law, an award of common-law prejudgment interest is subject to equitable considerations).  For the reasons described below, the Court is unwilling to exercise its discretion under the common law to award prejudgment interest to Koch (assuming that the Court has such discretion).

subd. 1(a) provides that, "[w]hen a judgment or award is for the recovery of money, . . . interest from the time of the verdict, award, or report until judgment is finally entered shall be . . . added to the judgment or award."  Thus, prejudgment interest under § 549.09 is only required—indeed, is only *authorized*—when there has been "a judgment or award . . . for the recovery of money."[13]  As there has been no "judgment or award" in Koch's favor, there can be no award of prejudgment interest under § 549.09, subd. 1(a).  *Cf. Fox v. Bd. of Trs.*, 42 F.3d 135, 141–42 (2d Cir. 1994) (rejecting claim that plaintiffs were entitled to pursue unpleaded claim for nominal damages pursuant to Fed. R. Civ. P. 54(c), which at that time provided that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party

---

[13]*See Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*, 793 N.W.2d 437, 441 (Minn. Ct. App. 2010) ("The parties . . . appear to agree that Soderbeck is not entitled to pre- or postjudgment interest under [§ 549.09] because Soderbeck did not obtain a verdict, award, or judgment for the recovery of money; rather, his malpractice claim was resolved by the mediated settlement agreement."); *Warrick v. Graffiti, Inc.*, 550 N.W.2d 303, 310 (Minn. Ct. App. 1996) ("[P]rejudgment interest is inappropriate in this case under . . . § 549.09, subd. 1, because there was no judgment or award that could serve as the basis for a prejudgment interest award."); *Great W. Cas. Co. v. Barnick*, 542 N.W.2d 400, 401–02 (Minn. Ct. App. 1996) (holding that statutory precursor to § 549.09 "expressly requires that there be a 'judgment' against an insured before an insurer's obligation to pay prejudgment interest is triggered"); *Frontier Pipeline, LLC v. Metro. Council*, No. A12-22, 2012 WL 2203016, at *1–3 (Minn. Ct. App. June 18, 2012) (reversing lower court and finding that, because defendant "paid the [disputed amount in a breach-of-contract action] in the absence of a judgment, award, or verdict requiring it to do so," plaintiff was not entitled to prejudgment interest under § 549.09).

-26-

has not demanded such relief in the party's pleadings" because "there is no 'final judgment' for Plaintiffs in this case upon which the rule may operate").

Second, even if a money judgment had been entered in favor of Koch, the Court would exercise its discretion to deny an award of prejudgment interest. In its answer to the amended complaint, in its counterclaims, in its motion for summary judgment, in its summary-judgment briefing, at oral argument on its summary-judgment motion, and in its proposed order granting its summary-judgment motion, Koch repeatedly and consistently identified the relief that it was seeking: $4,662 for the premium refund; $24,672 for the owner/operator deposit; and a fluctuating figure for loss-adjustment expenses (the parties eventually agreed on $187,254.78). *See* ECF No. 34 at 6–11; ECF No. 55; ECF No. 56 at 3, 9–11, 26; ECF No. 60 at 2, 16. RLI then provided precisely that relief to Koch after Koch indicated at the summary-judgment hearing that, if RLI did so, Koch's counterclaims would be moot. Koch did not say a word about prejudgment interest until, weeks after the summary-judgment hearing, and after RLI had provided all of the relief that Koch had sought in its counterclaims and summary-judgment motion, Koch claimed an entitlement to prejudgment interest in its response to the Court's show-cause order—an order that was necessitated by Koch's *volte face* on the issue of mootness.

-27-

Koch's position is thus comparable to the position of a litigant who files suit seeking only declaratory and injunctive relief and then seeks to add a claim for damages in the late stages of litigation in order to save the case from mootness.  In *Fox*, for example, a group of students sued their university, seeking injunctive and declaratory relief for alleged violations of their First Amendment rights.  The plaintiffs graduated before the case was resolved, which appeared to moot their claims.  The plaintiffs argued that their claims were not moot because they could also claim nominal damages. The Second Circuit rejected this argument because there was "no specific mention in the Complaint of nominal damages" nor could such a request be "inferred from the language of the Complaint."  42 F.3d at 141 (citation, quotation marks, and alterations omitted).  The plaintiffs pointed to "the prayer in the Complaint for 'such other relief as the Court deems just and proper,'" but the Second Circuit held that this "boilerplate prayer" was insufficient to preserve plaintiffs' claim for damages.[14]  *Id.*

---

[14]*See also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) ("It should have been clear to the Court of Appeals that a claim for nominal damages, extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection."); *Richards v. N.L.R.B.*, 702 F.3d 1010, 1016 (7th Cir. 2012) ("Because any request for postage reimbursement has been waived, this last-minute request cannot serve as a basis for standing."); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("A request for damages . . . will not avoid mootness if it was 'inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.'" (citation omitted)); *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 407 (6th Cir. 2006) ("When asserted to avoid mootness, courts are reluctant to find that a party stated a claim for damages.").

The Court recognizes that, if judgment had been entered in Koch's favor, the Court would have discretion to award prejudgment interest notwithstanding Koch's failure to seek prejudgment interest in any of its pleadings or briefs. *Cont'l Indem. Co. v. IPFS of N.Y., LLC*, 7 F.4th 713, 717–18 (8th Cir. 2021). But given the circumstances recounted above—and given the fact that RLI withheld the payments only after Koch had first blatantly breached its own contractual duties—the Court would exercise its discretion not to award prejudgment interest to Koch.

In sum, the Court finds that Koch cannot save its counterclaims from being dismissed as moot by making a last-minute request for prejudgment interest.[15] Accordingly, Koch's counterclaims are dismissed without prejudice as moot.[16]

ORDER

---

[15]In Count IV of its counterclaim, Koch pleaded a claim for breach of the covenant of good faith and fair dealing. ECF No. 34 ¶¶ 70–80. Neither party addressed Count IV in their briefing or at oral argument. Because Koch did not seek any relief on Count IV that it did not also seek on Counts I–III, and because Koch has received all of the relief that it requested, Count IV is also dismissed as moot.

Koch also sought an award of attorney's fees and costs, ECF No. 34 at 10, but for the reasons already explained, a claim for attorney's fees and costs is insufficient to preserve an otherwise-moot claim.

[16]Because the Court finds that Koch's counterclaims are moot, the Court does not reach RLI's alternative argument that Koch cannot enforce its contractual rights to the premium refund, owner/operator deposit, and loss-adjustment expenses because Koch breached the SIR Agreement before RLI did.

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motions of plaintiff/counter-defendant RLI Insurance Company ("RLI") [ECF No. 43] and defendant/counter-claimant Stan Koch & Sons Trucking, Inc., ("Koch") [ECF No. 51] for summary judgment are GRANTED IN PART and DENIED IN PART as follows:

1.    RLI's claim for damages is DISMISSED WITH PREJUDICE AND ON THE MERITS.

2.    RLI's other claims are DISMISSED WITHOUT PREJUDICE AS MOOT. And

3.    Koch's counterclaims are DISMISSED WITHOUT PREJUDICE AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 15, 2021                    s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge

-30-